UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 4:22-CR-40053-JPG |
| JOHN EARL HALL, | |
| Defendant. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on a motion to Motion to Suppress Evidence (Doc. 24). The Defendant submitted the motion on July 10, 2023. The Government has opposed the motion. (Doc. 31). The Defendant seeks suppression of physical evidence found in his car and statements he made after his arrest because police used his cell-site location information (CSLI) without receiving a warrant. Given this case is highly similar to *United States v. Hammond*, 996 F.3d 374, 374 (7th Cir. 2021), the Court finds that *Hammond* controls. Accordingly, the Court **DENIES** the motion.

## FACTUAL BACKGROUND

The following facts are alleged by the Government. On Tuesday, August 23, 2022,[1] the Defendant—who resided in Arkansas—traveled to Henderson, Kentucky, in a silver or grey sedan and allegedly attempted to rob the local German American Bank.[2] The next day—Wednesday, August 24—the Defendant traveled to Carbondale, Illinois. The Defendant parked his car—the same silver or grey sedan—in an apartment complex's parking lot, behind the local

---

[1] Unless otherwise indicated, all events took place in 2022.
[2] The Defendant allegedly entered the bank and presented the robbery note, but the teller and manager shouted the Defendant down and ejected him from the bank.

Regions Bank in Carbondale.[3] The following morning—Thursday, August 25—the Defendant was seen at a BP Station in Ava, Illinois, before returning to Carbondale. The Defendant car was seen parked in the same parking lot as the day before, behind the Regions Bank. Rather than rob the Regions Bank in Carbondale, the Defendant drove to nearby Murphysboro, Illinois, and allegedly robbed the Regions Bank there.

Following the robbery, the Defendant returned to Ava, Illinois, and bought a prepaid phone from a Dollar General—across the street from the BP station he was seen at earlier that morning. The Defendant asked one of the Dollar General employees to set up the phone and to call the store to ensure the phone was working properly. After the employee followed his request, the Defendant returned to Arkansas.

Subsequently, over the course of several hours, Murphysboro Police Department (MPD) received information about the Defendant's clothes, car, and license plate; from various sources. The license plate confirmed that the car involved in the Murphysboro robbery was the same car involved in the Henderson attempted robbery.

The morning after the robbery—Friday, August 26—MPD learned about the Defendant's new phone and retrieved its number from the Dollar General's call log. At this point the investigation bifurcated: FBI agents followed up on the car while MPD followed up on the phone. All of the following developments took place later that same day.

The FBI discovered that the Defendant's car was registered to an Arkansas woman. The Defendant bought the car from the woman's son, using an alias. Agents discovered the Defendant's identity and his criminal history. The Defendant was previously convicted of bank robbery and had been released from prison eighteen months earlier.

---

[3] The Government alleges that this is the Defendant's modus operandi: park in an adjacent parking lot to the target bank, never in the bank's lot itself.

Contemporaneously, MPD filled out a Verizon "Emergency Situation Disclosure" form, requesting historical CSLI (hereinafter "H-CSLI") for the last twenty-four hours. On the Verizon form, there is a section where officers can request H-CSLI or prospective/real-time CSLI (hereinafter "P-CSLI"). MPD requested H-CSLI, but did not have a warrant for the request. MPD indicated that there were exigent circumstances. MPD did not request P-CSLI. Within a few minutes, Verizon reviewed and granted the request. Verizon provided officers with H-CSLI—which the Government claims MPD never used—as well as P-CSLI—which MPD did not request, but used to find the Defendant's location. Notably, MPD was unaware of the Defendant's past convictions at the time they made the request to Verizon.

At 10:14 A.M., MPD received the first "ping" indicating the phone was active near a residential address in Arkansas. The Government claims "there was no accuracy information associated with this 'ping.'" Nevertheless, Arkansas police searched the area and, at 10:58 A.M., found the Defendant's car parked outside a trailer, less than a quarter mile from the first "ping." A local officer surveilled the trailer. Around noon, the Defendant exited the trailer and got in the car. The Officer tried to follow the Defendant onto Highway 70, but he evaded the Officer. While the Defendant escaped, police continued to receive P-CSLI. The next "ping" police received was twenty minutes later (~12:20 P.M.), at a road just off Highway 70. Another twenty minutes later (~12:40 P.M.), the phone was "pinged" in a field further off Highway 70. As a result, the police focused their search there.

Around thirty minutes after the last "ping," at 1:11 P.M., a local officer on patrol saw the Defendant parked in a wooded area. The Officer knew the owner of the land and found the presence of the Defendant's car suspicious. The Officer turned his squad car around and saw the Defendant turn onto a dirt road that the Officer knew, from personal experience, was largely

unnavigable. The Officer confirmed that the car was wanted in connection with the robbery and continued to follow the Defendant. The Defendant turned on to another road and fled at high speed. The Officer pursued and, after a chase, arrested the Defendant on local charges related to the chase.

According to the Government: "In plain view, officers observed the clothing defendant wore during both bank robberies, the packaging material from the phone purchase the day prior, and a Dollar General bag. Additional evidence was located following a search of the vehicle." (Doc. 31). After the Defendant was arrested, Mirandized, and extradited, on September 22, 2022, he admitted to the Murphysboro robbery and asked the police several questions, wondering if the "feds" would be interested in his case given he had not used a firearm.

## ANALYSIS

Cellphone towers "ping" cellphones at regular intervals. These "pings" provide information on the cellphone's location and GPS coordinates can sometimes be obtained through "pinging." Service providers keep a log of these GPS coordinates for a period that ranges depending on the provider. This data is called cell-site location information (CSLI). As alluded to earlier, there are two kinds of CSLI: prospective CSLI ("P-CSLI") and historical CSLI ("H-CSLI.") P-CSLI is a cellphone's present "pinged" location, while H-CSLI is a historical record of a cellphone's previous "pinged" locations.

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. CONST. amend. IV. The Fourth Amendment's prohibition on unreasonable searches and seizures applies to a person's H-CSLI. *Carpenter v. United States*, 138 S. Ct. 2206, 2206 (2018). In *Carpenter*, police had obtained the Defendant's H-CSLI going back months, without a warrant. Because accurate monitoring of one's location over a long period of time can reveal

extensive, private information about one's life, the Supreme Court found that "the Government will generally need a warrant to access CSLI." *Id.* at 2222. The Supreme Court reasoned that, in the modern era, people's phones are with them almost everywhere they go and thus, obtaining access to a person's cellphone location provides similar information to an ankle monitor. *Id.* at 2218.

While the Supreme Court declined to address whether P-CSLI was subject to similar requirements, *Id.* at 2220 ("[w]e do not express a view on matters not before us [such as] real-time CSLI"), the Court of Appeals for the Seventh Circuit found that P-CSLI does not necessarily implicate the same privacy interests as H-CSLI and, therefore, may not require a warrant. *United States v. Hammond*, 996 F.3d at 389-390 (7th Cir. 2021). In *Hammond* the Defendant committed bank robbery and was actively fleeing police, while traveling on public roads. Police obtained the Defendant's P-CSLI and, over several hours, tracked down and arrested him.

Distinguishing from *Carpenter*, The Court of Appeals has reasoned that the kind of privacy concerns the Supreme Court had—that government could peer into the peoples' private lives of people and divine every aspect of their lives—are not a concern when the CSLI in question is used for a short time (a few hours in *Hammond* compared to 126 days in *Carpenter*),[4] was narrow in scope (seeking his current location to follow and capture him, not to surveil him), and used largely while the Defendant was traveling on public roads and parking areas. *Id.* The Appellate Court found that tracking a fleeing Defendant on public roads with P-CSLI was acceptable under *United States v. Knotts*, 103 S. Ct. 1081, 1081 (1983) (Gov't's placing a beeper on a barrel in a truck was not a Fourth Amendment violation because the Defendant traveled on

---

[4] Time is an important factor, both because it implicates one's privacy interests, but also because police can compile all the P-CSLI pings they receive to construct a de facto H-CSLI log.

public roads). Yet, in *Hammond*, the police had also obtained the Defendant's H-CSLI without receiving a warrant. However, the police never used the H-CSLI they acquired in Hammond's trial. The Appellate Court found that because the H-CSLI was never used in trial, even *if* it was obtained in violation of the Fourth Amendment's warrant requirement, it did not bear fruit and, thus, was a "violation in want of a remedy." *Hammond* at 386.

Here, the police requested the Defendant's H-CSLI. The police believed that exigent circumstances existed at the time of their request. While Verizon did provide the police with the Defendant's H-CSLI for the prepaid cellphone (which had only been active at that point for one day) the police never used the Defendant's H-CSLI. Because the Defendant's H-CSLI was never used, even if exigent circumstances did not exist, there is nothing to suppress; similar to *Hammond*, it is a (possible) violation in want of a remedy.

While the police did not use the Defendant's H-CSLI, Verizon did provide the police with the Defendant's P-CSLI. As P-CSLI can become de facto H-CSLI and, depending on use, can implicate the same privacy interests, the Court must look to the factors the Court of Appeals laid out in *Hammond*: time, scope, and the Defendant's privacy interest in their location. The Court then determines whether the time, scope, and privacy interest are more like *Carpenter* or more like *Hammond*.

Here, the similarities with *Hammond*, and the differences from *Carpenter*, are stark. The police received the Defendant's P-CSLI at 10:14 A.M. and the Defendant was located by a local officer at 1:11 P.M. that same day.[5] In total, police had the Defendant's P-CSLI information for approximately three hours before he was found and around four hours before he was arrested. Comparing this to the time frame in *Hammond* and *Carpenter*, and the Court observes that the

---

[5] As a result of the P-CSLI, after the Defendant already tried to flee.

Defendant's P-CSLI was used for a shorter time than the Defendant's P-CSLI was used in *Hammond*.

Likewise, here, the Defendant's P-CSLI was used to apprehend, rather than surveil. Beyond locating where the Defendant was to apprehend him, the Defendant traveled almost entirely on public roads. While the Defendant was in his home at the time his phone was pinged; officers searched for the Defendant's car, which was parked openly in his driveway—readily observable from a public road. The Defendant was not entitled to Fourth Amendment protection to what was readily and publicly observable in his driveway. *E.g.*, *United States v. Evans*, 27 F.3d 1219, 1228-29 (7th Cir. 1994). Moreover, officers did not attempt to apprehend the Defendant until after he had exited his home and began driving his car—a car's whose license plate was already known to police. The Defendant's escape took place entirely on public roads and highways—again, similar to *Hammond*.

Therefore, because the Defendant's P-CSLI was used for only a few hours, solely for the purpose of apprehending the Defendant, and while the Defendant was primarily on public roads or while his car was readily and publicly observable; the Court finds that *Hammond* controls and that police were not required to obtain a warrant before receiving his P-CSLI. Additionally, because the Defendant's H-CSLI was never used, no evidence was obtained as a result of it i.e., it bore no fruit. Consequently, the physical evidence obtained from the Defendant's car is not "fruit of the poisonous tree."

Briefly, the Court turns to whether the Defendant's post-*Miranda* statement should be suppressed. The Defendant was *Mirandized* upon his arrest. The Defendant had been previously convicted and was recently released. The Defendant was well-aware that any statements made to law enforcement may be used against him. Regardless, the Defendant volunteered the

incriminating statements, nearly a month after his arrest. The Court sees no reason why those statements should be suppressed.

## **CONCLUSION**

Therefore, because the facts here are highly similar to *Hammond*, *Hammond* controls. The Defendant's P-CSLI was not subject to the warrant requirement and, because the police never used it, the Defendant's H-CSLI does not taint the evidence. Moreover, the Defendant's volunteered post-*Miranda* statements were not obtained in violation of his rights under the Fourth, Fifth, or Sixth Amendments. Thus, neither the physical evidence nor the post-*Miranda* statements will be suppressed. Accordingly, the Court **DENIES** the motion.

**IT IS SO ORDERED.**
**DATED:  November 15, 2023**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**